## * STATE OF OHIO EX REL. POE v. RAINE, AUDITOR.

QUESTIONS OF DOUBT WHICH SHOULD BE SETTLED BY THE SUPREME COURT.

The boards of equalization for the city of Cincinnati for the years 1884, '5, '6 and 7', increased the valuation of many tracts of land on the duplicates as submitted to them, and also largely increased the valuation of new entries and new structures, over the value of those destroyed, as returned by the several city assessors for the current years; and reduced the valuation of other tracts on the duplicate which appeared to be appraised too high, and grossly unequal as compared with the valuation of the other real estate on the duplicate—the deductions so made from tracts of real estate being greater in amount than the additions made by said several boards to other tracts of real estate other than those made on account of new entries and new structures, but much less than the aggregate amount of additions made to the real estate valuation, including that made on account of new entries and new structures, over the amounts thereof returned by the assessors. Such action of the boards of equalization was acquiesced in and acted upon, and taxes levied and paid on such valuation as returned by the several boards until 1889, when the auditor of state directed the auditor of Hamilton County, to correct on the duplicate for such years and for the years 1887 and 1888, the valuation of the property from which such deductions were made, and to charge against such property the taxes for such past years. And no further or more explicit or specific directions were given by the auditor of state. The county auditor having declined to carry out those instructions, this proceeding in mandamus is prosecuted to require him to do so.

Held: That in view of the doubt entertained, whether under the statute the auditor of state has, on the facts set out, the right to require the auditor of the county to follow such directions, and whether the boards of equalization had not the right to act as they did, and of the propriety of having these questions settled by the supreme court, before entering upon the investigation of the many questions of fact which will arise if such questions are settled in favor of the relator, the writ will now be refused.

MANDAMUS.

SMITH, J.

Two questions have been argued to us in this case, and we have had difficulty in arriving at a conclusion as to either of them.

---

* The judgment in this case was reversed by the supreme court. See opinion 47 O. S., 447.

If decided in favor of the relator, the result would probably be that we would have to enter upon the investigation in this case, of the facts in hundreds of instances where reductions have been made by the annual boards of equalization of this city, for the years 1884-5-6-7 and 8, to ascertain whether such reductions were legal—for it is conceded, as we understand, that many of them were in whole or in part, in conformity with law—for the reason that the city boards of equalization in each of these years, had increased the valuation of many tracts of real estate on the duplicate, and thus unquestionably had the right to reduce, by an equal amount, the valuation of such other tracts as may have been found' to have been appraised so high as to make the valuation thereof, as returned by the city assessors, grossly unequal, as compared with that of other tracts on the duplicate. And so far as appears to us, there is no way in which it can be determined (if the contention of the relator be right), which of the reductions so made by the several boards were legal and which were unauthorized. And therefore the investigation as to this, and whether these deductions were legal or illegal in particular instances would probably occupy us for weeks or months. In view, therefore, of these facts, and of the doubt which we entertain as to the questions presented to us, we are of the opinion that we should now refuse to issue a peremptory writ as prayed for; that it would be better that the questions of law argued to us, should first be settled by the supreme court, and if, on such hearing, it be found that the claims of the relator are well founded, and an investigation of the many cases is necessary, that the case might be remanded to this court, if thought best, to be proceeded with in accordance with the directions of that court.

The points so argued to us, and as to which we have the doubt spoken of, are these: and we state as briefly as may be the points of difficulty:

The first question is, whether the auditor of state, Poe, on the allegations of the petition that the annual boards of equalization for the city during the years, 1884-5-6 and 7, illegally reduced the value of the real property of the city of Cincinnati, below what it was entitled by law to do, was authorized to direct and require the auditor of the county to correct on the duplicate for such years, and for the years 1887 and 8, the valuation of the property from which such deductions were made, and to charge against such property, the taxes for the past years—and whether, on the refusal of the auditor, he may be compelled in this proceeding to do it—no further or more definite statement or description being given by the auditor of state to the county auditor, as to the particular property, the valuation of which was to be so changed, or the amount that the valuation of any particular tract should be raised.

It seems clear, under the provisions of sec. 166, Rev. Stat., that it is the right of the auditor of state to give instructions to the county auditor, "upon any subject affecting the state finances, or the construction of any statute, the execution of which devolves in part upon the county auditors, and which affects the interests of the state, as he deems conducive to the best interests of the state; and county auditors, and all local officers acting under such laws, shall observe and use such forms and obey such instructions." It follows from this, we think, that instructions given by the auditor of state to these boards of equalization, that they should make deductions from the duplicate only in a certain manner, and as is now claimed by the auditor of state to be the legal manner, should be observed and followed by such boards, unless held by the courts to be illegal; and that their compliance with these instructions, if found to be legal, might be compelled by mandamus or other proper remedy; but it seems to us that a different question is presented, when it appears that they have, for a series of years, adopted a different mode, and this until now has been fully acquiesced in by the public authorities concerned. That taxes have been levied on such real estate on the valuation as thus reduced by the boards of equalization, and paid by the owners, and transfers doubtless made of much of said real estate, and rights therein have been acquired by others, on the faith that the action of the public officers was legal; and it may well be doubted whether the auditor of state may, at this late day and in this wholesale way, require the county auditor to revise and alter the result of the action of these several boards of equalization, upon which alone, (in conformity, it is true, with directions pointed out in the statute), the legislature has conferred this power—the auditor of the county, being only one of the members of such board.

Under sec. 167, Rev. Stat., the auditor of state "may remit such taxes and penalties thereon, as he ascertains to have been illegally assessed, and such penalties as have accrued or may accrue in consequence of the negligence or error of any officer required to do any duty relating to the assessment of property for taxation, or the levy or collection of taxes, and he may from time to time correct any error in the assessment of property for taxation or in the duplicate of taxes in any county."

It is claimed by counsel for relator, that under the provisions of this section, and particularly of the last clause, that the auditor of state can legally require the county auditor to correct his duplicate in the manner claimed: that is, by adding to it the amount of deductions which it is said, were improperly made from some tracts of land by the boards of equalization. But this is not at all clear. In the first place, the section we think confines

this power to correct the duplicate to particular cases—and does not seem to have been intended to confer the right to have corrections made by such a general order as was given in this case, involving a great many parcels of lands.  It is doubtful, too, whether this section was not intended to limit the power of the auditor of state to the remission of taxes illegally assessed—it certainly is not in accordance with the spirit of our revenue statutes, where returns have been made by the assessors of the valuation of property, and placed upon the duplicate, and have passed the scrutiny of the board of equalization, and then been entered upon the duplicate of the county auditor, and taxes assessed and paid on such valuation for a number of years, that the auditor of state, without any notice to the owner of property so on the duplicate, should order any addition to be made thereto that seems to him in conformity to law, and that this must be done by the county auditor when he receives such directions.

Second—On the admitted facts in this case, was the action of the boards of equalization in violation of the law?

By the terms of sec. 2805, Rev. Stat. (as amended, 83 O. L., 224), the annual boards of equalization in cities of the first class are to be governed in their action by the rules, provisions and limitations provided for annual county boards of equalization by sec. 2804, Rev. Stat.  This section provides, "that said board shall not reduce the value of the real property of the county (city) below the aggregate value thereof, as fixed by the state board of equalization, nor below its aggregate value on the duplicate of the preceding year, to which shall be added the value of all new entries and new structures, over the value of those destroyed, as returned by the several township (city) assessors for the current year, provided, further, that except as to new structures and structures destroyed, and lands and lots brought on to the tax list since the preceding decennial state board of equalization, the annual county (city) board shall not increase or reduce the valuation of any real estate, except in cases of gross inequality, and then only upon reasonable notice to all persons directly interested, and an opportunity for a full hearing of the questions involved."

It may be noticed here that the last proviso of this sec. 2804, apparently (by implication at least), confers upon these boards the right not only to equalize the assessments of new entries, and new structures returned for the current year by the township (city) assessors as authorized by sec. 2807, but also to increase or reduce the valuation of new structures and structures destroyed, and lots brought on the tax list since the preceding decennial state board of equalization, and this without notice to the persons directly interested therein, subject however to the limitation in the first proviso of sec. 2804, in effect that such action shall not reduce the aggregate value of the duplicate as received by the board.

The question then for consideration on this branch of the case is this.  Suppose that the annual board of equalization in the exercise of the power thus impliedly given to it, increases the aggregate value of new structures (over the value of those destroyed) as returned by the several township (city) assessors for the current year, thus in effect adding so much to the valuation of the real estate of the city over that as shown by the duplicate as received by such board, may reductions then be made by the board from the valuation of other tracts of land as they appear on the duplicate, if found to be too high, and there is gross inequality therein as compared with that of other lands on the duplicate, provided that the aggregate amount of the duplicate as left by the board is not less than when received?

If the board has the right to do this, it is conceded that the action now complained of was right.

Is this the proper construction to be placed on the statute?  It is affirmed by one side and denied by the other, and though it is not at all clear that such is the case, I am of the opinion that there is certainly ground for thinking that such was the intention of the legislature.  As before stated it is clear that the annual board of equalization can not legally reduce the value of the duplicate as received by it, that is as it stood for the preceding year with the amount returned by the assessors for new structures added thereto, but if the board sees proper to, and actually does increase the value of the new structures as so returned by the assessors for the current year, it is difficult to see why the increase thus made, should not be available and be a warrant to the board under the terms of the statute, for the reduction of the valuation of other tracts whose appraisement was too high, and grossly unequal as compared with other property on the duplicate.  The addition thus made to the duplicate by the board is an increase in the value of the real estate thereon, and in the case supposed, the result of the action of the board is, that the valuation of the real estate of the city is not reduced below the aggregate value thereof, as fixed by the state board of equalization, nor below its aggregate value on the duplicate of the preceding year, to which aggregate value has been added the value of all new entries and new structures over those destroyed as returned by the several township (city) assessors for the current year.  And if it is to receive this construction there is nothing in the language of the statute which makes the action of the different boards in the matter now complained of, illegal or wrong.

The other construction placed upon this section as I understand is this, that to the real estate duplicate of the preceding year as equalized by the board, (that is, by adding to

the valuation of some one or more tracts an amount not less than the deductions made from other tracts valued too high), there must be added not only the amount of the value of new entries and new structures (over the value of those destroyed), as returned by the several city assessors for the current year, but in addition thereto the increased value of the new entries and structures as fixed by the board of equalization, and that these items constitute the duplicate for the coming year. And as a consequence, no matter how much the board of equalization has thus increased the amount of the duplicate over its amount when received by it, this does not give to it the right, for this reason, to reduce to any extent whatever, the valuation of any other real estate which the board finds to be appraised too high, as compared with other lands on the duplicate.

While there is force in this claim I am not prepared to adopt such a construction of the statute,—the other seeming to me to be more consonant with justice and the purpose of the law.

Judge SWING is of the opinion that in this case the auditor of state had the right to order the auditor of the county to correct the duplicate as he was directed to do, and that the construction of the law claimed by the relator is correct.

Judge COX thinks with me that the auditor of state had not the right in this case to require this general correction to be made.

The court is unanimous however, in the opinion that in view of the doubt as to what the law is on these points, that it should be settled by the supreme court before this court shall go further into the investigation of the many questions of fact which would arise.

Writ refused.

Rufus B. Smith and Thomas McDougall, for relator.

Davidson & Hertenstein, County Solicitors, Drausin Wulsin, O. J. Cosgrove, T. B. Paxton and C. W. Baker, for respondents.

---

# WATERWORKS' FUNDS. 156